IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

USF HOLLAND LLC,  )
 )
                Plaintiff,  )
 )
v.  )    Case No. 17-2232-JWL
 )
WORLDWIDE TRANSPORTATION  )
SHIPPING CORP.,  )
 )
                Defendant.  )
 )
_____)

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the parties' cross-motions for summary judgment. As more fully set forth below, the Court concludes that a question of fact remains for trial concerning whether the parties' contract applies to the job from which the suit arose; but that if the contract does apply, plaintiff may not seek its attorney fees and expenses incurred in litigating this action. Accordingly, plaintiff's motion (Doc. # 47) is **denied**, and defendant's motion (Doc. # 49) is **granted in part and denied in part**.

### I. **Background**

The following facts are undisputed. Plaintiff USF Holland LLC is a transportation company specializing in "less than truckload" shipping. Defendant Worldwide Transportation Shipping Corp. is a cartage service that provided pickup and delivery

services for Holland upon request. On June 25, 2014, the parties executed the written contract on which the present suit is founded.

On September 17, 2014, defendant performed pickup and delivery services originating at plaintiff's terminal in McCook, Illinois. Defendant's driver was hospitalized a few weeks after performing that job, and he subsequently died. The driver's next of kin proceeded to file a workers' compensation claim under Illinois law against defendant and plaintiff, based on the allegation that the driver's injury was sustained while performing the job for plaintiff, and that claim remains pending. Defendant submitted the matter to its liability insurer, but the insurer denied coverage, and in March 2018, an Illinois state court ruled in the insurer's favor on the basis that the policy covered Iowa but did not cover Illinois.

In the present action, based on diversity jurisdiction, plaintiff alleges that defendant, in failing to provide a defense and indemnification of plaintiff for the workers' compensation claim, breached (a) a provision in the parties' contract requiring defendant to obtain insurance and (b) a provision requiring defendant to indemnify plaintiff. Plaintiff seeks as damages its attorney fees and expenses incurred in defending the workers' compensation claim and in litigating the present enforcement action. Plaintiff also seeks a declaratory judgment and specific performance with respect to the indemnification provision.

II.     **Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**III.** **<u>Scope of the Contract</u>**

It is undisputed that defendant has not defended plaintiff or agreed to indemnify plaintiff with respect to the workers' compensation claim and that defendant failed to procure insurance that covers that claim. On the basis of those facts, plaintiff seeks summary judgment on its claims for breach of the insurance (¶ 6) and indemnification (¶ 10) provisions of the parties' contract. Defendant seeks summary judgment on those claims for breach of contract on the basis of its argument that the terms of the written contract do not apply to the particular job from which the workers' compensation claim arose. Specifically, defendant argues that the contract applies only to pickup and delivery services requested by the manager of plaintiff's Rock Island terminal. In this case, the relevant pickup occurred at plaintiff's McCook terminal, and plaintiff does not dispute that that service was not requested by the Rock Island manager. Thus, the case turns on whether the contract applies to services other than those requested by the Rock Island manager. If it does, defendant does not dispute that it has breached the contract, and plaintiff is entitled to summary judgment on the issue of liability; if it does not, there is no breach as a matter of law, and defendant is entitled to summary judgment, including with respect to plaintiff's equitable claims, which depend on the existence of a contractual obligation.

The Tenth Circuit recently summarized Kansas law[1] concerning the interpretation of a contract as follows:

> Under Kansas law, the primary rule in interpreting written contracts is to ascertain the intent of the parties. Furthermore, unambiguous contracts are enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced. The intent of the parties is determined from the four corners of an unambiguous instrument, harmonizing the language therein if possible. Ambiguity does not appear unless it is genuinely uncertain which of two or more meanings is the proper meaning. A contract is ambiguous if it contains provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Courts should not strain to create an ambiguity where, in common sense, there is none. Finally, a court should consider extrinsic or parol evidence only after it has concluded that the plain language of the contract is ambiguous.

*See Lincoln v. BNSF Railway Co.*, __ F.3d __, 2018 WL 3945875, at *9-10 (10th Cir. Aug. 17, 2018) (footnote and internal quotations and citations omitted).

The contract's insurance and indemnification provisions are not limited to any particular jobs or services requested by plaintiff or performed by defendant: the insurance provision (¶ 6) provides in relevant part that defendant "will procure and maintain" worker's compensation insurance "in accordance with statutory requirements of jurisdiction [*sic*] where work is being performed;" the indemnification provision (¶ 10) on its face applies to "any liabilities, claims or demands . . . by . . . persons supplied by [defendant] . . . for injuries or damages claimed under workers' compensation or similar acts." The introductory paragraphs of the contract contain the following provision: "The terms of this Agreement shall apply to all Services provided by [defendant]." The term

---

[1] The parties agree that plaintiff's claims are governed by Kansas law in accord with the contract's choice-of-law provision.

5

"Services" is not defined in the four-page contract (which contains signature blocks on page four). A paragraph titled "BACKGROUND" after the introductory paragraphs states as follows: "[Plaintiff] requires the services of [defendant] with respect to the tasks specified as per the Statement of Work attached hereto ('SOW')." Paragraph 1 of the contract, titled "Statement of Work," states as follows: "[Defendant] agrees to perform the services listed in any SOW issued hereunder by [plaintiff] and accepted by [defendant]." Attached to the four-page contract is a one-page statement of confidentiality, labeled Exhibit A (with "Page 5" at the bottom), containing a separate signature block; and a one-page "Statement of Work" (on "Page 6"), with another signature block. Only one Statement of Work (SOW) is included in the six-page document that the parties have stipulated represents the contract that they executed, and neither party has submitted evidence that there was any other SOW issued under this contract. The SOW includes the following provision:

> 2. Scope of Services
> A. Description of Services: Provide pickup and delivery services as requested by Rock Island terminal manager

The Court concludes that the contract is ambiguous with respect to the scope of its terms, as each party's interpretation is a reasonable one based on the language of the contract. As defendant argues, the SOW refers only to services requested by the Rock Island manager in its "Description of Services," and that is the only provision purporting to describe or define the "Services" to which the contract applies. In the main portion of the contract, defendant agrees only to provide services listed in "any" SOW issued thereunder, and the only SOW is limited to particular jobs; thus, in this contract, defendant

only agreed to perform particular jobs (those requested by the Rock Island manager), and it is reasonable to interpret the contract to mean that its provisions apply only to jobs undertaken in an SOW.[2] This interpretation does not foreclose plaintiff's interpretation, however, because the SOW does not clearly indicate that it is defining the word "Services" for all purposes as used in the main portion of the contract, which contains no definition of the word and which does not limit its applicability to specific jobs listed in SOWs.

Plaintiff's interpretation is also reasonable. The contract expressly provides that its terms apply to "all Services" provided by defendant to plaintiff. The terms of the contract do not apply to "the Services", which would have suggested a special meaning for that word, and "Services" is not specifically defined in the contract; thus, it is reasonable to interpret the scope provision to refer to *all* services provided by defendant, in accordance with its plain meaning. The contract may refer to "any" SOW to allow for the possibility that no SOWs are issued. Contrary to defendant's argument, this interpretation does not make the SOW's reference to specific jobs a nullity, as the parties may have intended an SOW to set forth any special or additional terms (such as specific pricing) that govern the particular jobs to which the SOW applies. Thus, as plaintiff argues, it is reasonable to

---

[2] Defendant also argues in its reply brief that the contract should be construed against plaintiff as drafter, but the Court does not ordinarily consider arguments raised for the first time in a reply brief. *See U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2006 WL 1007099, at *3 n.5 (D. Kan. Apr. 14, 2006) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)). Moreover, the Court would ordinarily wait to apply that rule of construction until after it considers whether the parties' intent may be determined from the facts. *See First Nat'l Bank of Olathe v. Clark*, 226 Kan. 619, 623 (1979). Thus, because the Court concludes that a question of fact remains concerning the parties' intent, the Court would not apply that rule until after trial in this case.

interpret the contract as applying to all work performed by defendant for plaintiff, with SOWs issued to set out additional terms, instead of interpreting the contract to apply only to particular jobs. This reasonable interpretation, however, does not make the contract unambiguous, as the only services that defendant agrees to perform under the contract are limited in the only SOW to those requested by a particular manager.

Because the Court concludes that the contract is ambiguous in relevant part, it may consider extrinsic evidence to determine the parties' intent (which ultimately governs). The Court further concludes, however, that the evidence submitted by the parties is not so one-sided as to allow the Court to resolve the issue at this stage as a matter of law. Plaintiff has provided evidence that the parties intended for a single contract---this contract---to cover all jobs performed by defendant. For example, plaintiff's controller testified that it was plaintiff's policy to require all work by a delivery contractor to be performed under written contracts, specifically to make sure that the contractor had assumed insurance and indemnification obligations.

Plaintiff also cites an email in which the Rock Island manager told the controller that defendant was ready for a job---a job at an Iowa terminal---because defendant had now executed the contract. Plaintiff argues that the email provides further evidence that this contract was intended to cover jobs other than those at the terminal in Rock Island, Illinois. On the other hand, the email is not particularly helpful, however, because it does not foreclose the possibility that the Rock Island manager requested that Iowa job---indeed, the only evidence submitted concerning who requested that job is the email itself, in which the Rock Island manager stated that that job will be requested. Plaintiff also cites the stipulated

8

fact that defendant performed services for plaintiff in 2014 at seven different terminals. That fact does not necessarily favor plaintiff's interpretation, however, as the SOW refers not to the site of the pickup but to the requesting manager, and there is no evidence to establish that defendant performed jobs requested by managers other than the Rock Island manager. Moreover, as defendant argues, even if jobs were requested by other managers, that fact does not foreclose the possibility that such jobs were performed without a written contract (as defendant agues the parties intended).

Defendant has not offered any direct evidence of its intent in executing the contract. Defendant argues that each of plaintiff's terminal managers had discretion to enter into his or her own contracts with delivery contractors such as defendant, but the evidence on which it relies does not support that argument. Defendant cites to the deposition of plaintiff's controller, but the controller made clear in his testimony that a written contract was required for any job and that plaintiff intended that one contract be executed to cover all jobs by a particular contractor. Defendant also notes that the parties' subsequent contracts executed in 2015 and 2017 are different from the 2014 contract and are not limited to particular jobs, but that different language does not necessarily mean that the parties intended to broaden the scope of their written contracts in 2015; to the contrary, those contracts arguably provide evidence that the parties' practice was for one contract to cover all jobs. In support of its argument that the parties did operate sometimes without a written contract, defendant notes that there were gaps between the effective terms of the parties' contracts. Such gaps are not relevant, however, without evidence that defendant actually

9

performed jobs for plaintiff during those gaps, and defendant has provided no such evidence.

Defendant has provided evidence that it performed work for plaintiff prior to the execution of the contract on June 25, 2014, which fact would support its argument that the parties did operate without a written contract on occasion (which in turn supports the argument that the parties did not necessarily intend the written contract to apply to all work by defendant for plaintiff). The person who executed the contract for defendant testified that defendant provided services for plaintiff beginning in April 2014. Defendant has not supported that testimony with documentation, and plaintiff has provided its own evidence that no jobs were performed before the execution of the contract. The Court does not weigh the evidence at this stage, however, and this factual dispute remains for trial.

Accordingly, the Court concludes that the parties' contract is subject to differing reasonable interpretations and that the parties' intent cannot be determined as a matter of law under the governing summary judgment standards. Therefore, the Court denies defendant's motion for summary judgment to the extent based on its argument concerning the scope of the insurance and indemnification provisions of the contract.

### IV. **Breach of the Insurance Provision**

Defendant seeks summary judgment on an alternative basis with respect to plaintiff's claim for breach of the insurance provision. Defendant argues that because the underlying workers' compensation claim has not been resolved, plaintiff's damages (if any) may not yet be ascertained. The Court rejects this argument. Plaintiff also seeks as

damages any fees and expenses that it has incurred in defending the workers' compensation claim, which damages would have resulted from defendant's failure to obtain insurance to cover that defense (assuming that that failure constitutes a breach of contract). In its reply brief, defendant has not addressed those damages claimed by plaintiff. The case cited by defendant, *Ostrom v. Farm Bureau Financial Services*, 2018 WL 2683968 (D. Kan. June 5, 2018), may be distinguished. In that case, the plaintiff was also the claimant on the underlying claim, and was not arguing that the defendant should have obtained insurance to defend him (the situation in the present case). *See id.* at *2-4. Moreover, the court's ruling in *Ostrom* turned on an issue of exhaustion that is not present here, and the court did not address any damages that had already been incurred. *See id.* In the present case, plaintiff has already incurred damages relating to the underlying claim, which damages may be ascertained at this time.[3] The Court therefore denies defendant's motion for summary judgment with respect to the issue of liability.

In seeking summary judgment on this claim under the insurance provision, plaintiff argues that even if the provision applies only to jobs requested by the Rock Island manager, it was still harmed by defendant's failure to obtain insurance for those jobs. Specifically, plaintiff argues that if defendant had obtained insurance to cover such jobs in Illinois, that same insurance would also have covered the delivery job at issue here, which originated in McCook, Illinois. The Court rejects this argument. Plaintiff has not shown as a matter of

---

[3] Plaintiff also suggests that its claims for equitable relief distinguish the present case from *Ostrom*. Defendant directs this argument only to planitiff's claim for damages for breach of the insurance provision, however, and as the pretrial order makes clear, plaintiff's equitable claims are based on the indemnification provision.

11

law that defendant was required to obtain insurance covering all jobs in a particular state, as opposed to obtaining insurance only for jobs within the scope of the contract. For instance, if the insurance obligation applied only to jobs requested by the Rock Island manager, defendant could have fulfilled that obligation by procuring insurance coverage for all such jobs, which insurance would not necessarily have covered other jobs performed in the same state. Plaintiff is correct that the insurance provision requires coverage "in accordance with statutory requirements of [the] jurisdiction where work is being performed." That reference to the jurisdiction (in this case Illinois), however, means only that defendant must obtain insurance deemed sufficient by the jurisdiction for jobs within the scope of the contract. Plaintiff has not shown that defendant could not have obtained insurance sufficient under Illinois law that would cover only certain jobs (those requested by the Rock Island manager). Thus, plaintiff cannot show as a matter of law that it was harmed by defendant's breach of the insurance provision even if that obligation did not extend to the job at issue here. Accordingly, the Court denies plaintiff's motion for summary judgment in its entirety.

### V. **Attorney Fees in the Present Action**

Finally, defendant seeks summary judgment on plaintiff's specific claim for damages consisting of attorney fees and expenses incurred by plaintiff in litigating the present enforcement action. Defendant argues that plaintiff lacks any basis for such an award. In seeking an award of its fees incurred in this action, plaintiff relies on the contract's indemnification provision, which states as follows:

12

> **10.** **<u>Indemnification</u>:** Contractor agrees to defend, indemnify and save Customer harmless from any liabilities, claims or demands (including the costs, expenses, and attorneys' fees on account thereof) that may be made: First, by anyone for injuries to persons or damage to property, including theft, resulting from Contractor's acts or omissions or those of persons supplied by Contractor; or second, by Contractor or persons supplied by Contractor or by any subcontractors used by Contractor for injuries or damages claimed under workers' compensation or similar acts. Contractor shall defend Customer against any such liability, claim or demand, should Customer so request. Customer agrees to notify Contractor of any written claims or demands made against Customer for which Contractor is liable hereunder. In addition to and not in lieu of any other defense and indemnity protections afforded Customer under this Agreement, Company shall also defend and indemnify Customer, its employees, officers, directors and agents, against any and all co-employment claims to include, but not limited to, claims for workers' compensation benefits, brought by contract employees or other personnel supplied, used, provided or assigned by Company under this Agreement.

This provision does provide for the recovery of attorney fees, but it provides only for fees incurred "on account [of]" third-party claims---claims by those injured by defendant's acts or omissions, and claims by persons supplied by defendant for damages under workers' compensation acts---and not for fees incurred because of first-party claims between the two parties to the contract.

This issue has been addressed by Kansas appellate courts only in one published opinion, *Chetopa State Bancshares, Inc. v. Fox*, 6 Kan. App. 2d 326 (1981). In *Chetopa*, the court noted that "indemnity contracts are not favorites of the law" and are strictly construed, and it held that although attorney fees are recoverable if provided by contract, "there must be express contractual language." *See id.* at 332, 333. The court found such express language in that case because the indemnity provision specifically authorized fees arising from a breach of any covenant in the contract itself. *See id.* at 333.

Plaintiff cites an unpublished opinion from the Kansas Court of Appeals, *GFSI Canada Co. v. Fletcher Leisure Group, Inc.*, 2012 WL 2045293 (Kan. Ct. App. June 1, 2012) (unpub. op.). The court allowed a claim for fees incurred in the enforcement action in that case, but the indemnification language at issue referred specifically to fees arising from any breach under the agreement. *See id.* at *14-15.

Plaintiff also cites two cases decided under Kansas law by the Tenth Circuit. In *Missouri Pacific Railroad Co. v. Kansas Gas and Electric Co.*, 862 F.2d 796 (10th Cir. 1988), the court construed an indemnification provision to allow fees incurred in the enforcement action itself. *See id.* at 801. In *Neustrom v. Union Pacific Railroad Co.*, 156 F.3d 1057 (10th Cir. 1998), the court simply followed *Missouri Pacific*, with little analysis, in allowing a claim of fees incurred in the enforcement action. *See id.* at 1067-68. In each case, however, the indemnification provision specifically allowed for fees arising out of a breach of the indemnification provision. *See Missouri Pac.*, 862 F.2d at 797-98; *Neustrom*, 156 F.3d at 1061. Again, the indemnification provision in the present case refers only to third-party claims and does not provide for fees incurred "on account [of]" any breach by defendant of the indemnification provision or other provisions of the contact. Thus, the Court is not compelled to reach the same result reached by the Kansas Court of Appeals and the Tenth Circuit in those cases.

In *Chetopa*, the Kansas Court of Appeals held that "express contractual language" is required for an award of fees in an enforcement action, and there is no such express language here. As noted above, the indemnification provision in the parties' contract refers only to the third-party claims, and it does not provide for indemnity for first-party claims

14

or for any breach by defendant of the contract. The fees incurred by plaintiff in defending the underlying workers' compensation claim were incurred "on account [of]" that third-party claim. The fees incurred by plaintiff in this enforcement action have been incurred because of defendant's alleged failure to satisfy its obligations under the contract, not because of the claim itself. *See National Minority Supplier Dev. Council Bus. Consortium Fund, Inc. v. First Nat'l Bank of Olathe*, 83 F. Supp. 2d 1200, 1207 (D. Kan. 1999) (rejecting claim for fees incurred in enforcement action because fees were not direct result of indemnitor's acts under the contract, but were only indirect result occasioned by decision to seek enforcement). Because an award of attorney fees incurred in this enforcement action is not authorized by express contractual language, as required under Kansas law, plaintiff's claim for such fees under the contract cannot stand. Plaintiff has not identified any other basis for an award of fees in this case. Therefore, the Court grants defendant's motion for summary judgment on plaintiff's claim for fees and expenses incurred in this action.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for summary judgment (Doc. # 47) is **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. # 49) is **granted in part and denied in part**. The motion is granted with respect to plaintiff's claim for attorney fees and expenses incurred in litigating

this action, and defendant is granted judgment on that claim. The motion is otherwise denied.

IT IS SO ORDERED.

Dated this 14th day of September, 2018, in Kansas City, Kansas.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge
